## THE STATE OF KANSAS v. FRANK BROWN.

1. LARCENY — *Evidence of Value.* In determining whether the theft of a quantity of wheat constituted grand or petit larceny, testimony of the market value of the wheat at the time and place of the theft was competent to establish the value of the property stolen; but as a thief is stealing the property from the time he takes it up until he lays it down, he has no cause to complain if the value of the property is measured by the market value at the place to which it was taken by him and sold.

2. REASONABLE DOUBT — *Instruction, not Misleading.* In explaining the rule of reasonable doubt, and as part of a definition, an instruction was given by the court that it did not mean "that the state should demonstrate to a mathematical certainty the defendant's guilt. That would be scarcely possible in any human trial." *Held,* Not to be misleading or prejudical when considered in connection with the remainder of the definition.

*Appeal from McPherson District Court.*

THE opinion states the case.

*W. J. Travis,* for appellant.

*F. B. Dawes,* attorney general, and *Charles W. Webster,* county attorney, for The State

The opinion of the court was delivered by

JOHNSTON, J. : Frank Brown was convicted of grand larceny in the district court of McPherson county, and the punishment adjudged was imprisonment in the penitentiary for a term of one year. In the information he was charged with stealing 55 bushels of wheat, of the value of $22, which was the property of E. A. Alger. That a quantity of Alger's wheat was stolen by the defendant appears to have been conceded, and the only contention at the trial seems to have been in regard to the quantity and value of the wheat stolen. The jury found that the defendant stole 51 bushels of wheat, of the market value of $20.40.

It is first contended that the court erred in admitting evidence of a confession of the defendant. Alger, the owner of the wheat, was allowed to testify that Brown admitted the stealing of the wheat in question, and that the quantity was about 55 bushels. The confession appears to have been freely and voluntarily made. The defendant was a witness, and admitted not only the taking of the wheat, but also that he made a confession to Alger that he had participated in the theft. He denied, however, that he made a statement to Alger in regard to the quantity of wheat taken. Under these circumstances, no substantial question can be raised on the admission of the confession.

The second objection of the defendant is that he was not permitted to offer evidence as to the market value of the wheat taken. The wheat was taken from the premises of the owner in an open wagon-box, and most of it was carried about 10 miles across the country to the town of Galva. The load appeared to be too heavy for the team, and at two different places wheat was thrown upon the ground. Testimony was intro-

duced tending to show that there were from eight to
10 bushels so left upon the ground, and that when
the defendant and his associate reached Galva there
remained in the box 45½ bushels, which they sold for
40 cents per bushel. There was testimony to the
effect that the wagon-box used was 10 feet long, three
feet wide and a fraction over 26 inches deep ; and
some of the witnesses testified that such a box would
hold from 55 to 60 bushels of wheat, depending upon
the quality. Wheat of the quality stolen was worth
at the neighboring towns from 40 to 42 cents per
bushel, and there was testimony offered showing that
wheat was worth 40 cents per bushel at the bin or
place from which the wheat was taken. The de-
fendant did not offer to prove the market value of the
wheat at the bin, but did undertake to prove what it
would cost a bushel to haul the wheat from the bin to
the nearest railway station. The market value, if it
had one, at the place from which it was taken was
certainly competent and perhaps the best testimony
in regard to its actual value, and the testimony offered
by the state showed that wheat had a market value
at that place, which was 40 cents per bushel, and
that was the value found by the jury. The defendant
claims that it was worth only 40 cents per bushel at
the railway station where it was sold, and he insists
that a man cannot steal his own labor, and therefore
the cost of hauling it from the bin to the railway
station should be deducted from the price at which
it was sold. The defendant can gain nothing by this
contention. It was Alger's wheat which was taken
from the bin, and it was his wheat when it was deliv-
ered at Galva. If the thieves had been overtaken and
the wheat recovered at that place, why would not the
value at that place be competent in determining the

grade of the offense? "A thief is stealing the property from the time he takes it up until he lays it down, although several counties may intervene between these points, and this principle is very generally recognized in the criminal jurisprudence of this country." (*The State v. Price*, ante, p. 606.) In view of the testimony that was given regarding the market value at the place from which the wheat was stolen, and the fact that the court instructed the jury that they could not convict the defendant of grand larceny unless "the reasonable and fair market value of the wheat at the time and place stolen was $20 or more," the defendant has no cause to complain.

The final complaint is in regard to the following language used in an instruction given by the court: "It does not mean that the state should demonstrate to a mathematical certainty the defendant's guilt. That would be scarcely possible in any human trial." It is said that the effect of this instruction is to take away from the jury the mathematical evidence given on the trial in regard to the quantity of wheat which the wagon-box would contain. We think the jury could not have been misled by the statement to which objection is made. As counsel for the state claimed, there was no real contention between the parties as to how many bushels of wheat could be held in a wagon-box of certain dimensions, but the dispute arose upon the size of the box that was actually used by the defendant. The statement about which complaint was made is taken from an explanation or definition by the court as to the meaning of the words, "reasonable doubt." It is doubtful whether any definition which may be given of these words will aid a jury in understanding their import, and while the attempt of the court in the present instance may not have been neces-

sary and did not result in making it any clearer to the minds of the jury, we are unable to see that the definition could have resulted in any prejudice to the rights of the defendant.

The judgment of the district court will be affirmed.

All the Justices concurring.